**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**



ELIZABETH A. RUSSELL,
individually, and on behalf of a class of
similarly situated individuals,

   Plaintiff(s),

     v.

FCA US LLC, a Delaware limited
liability company,

   Defendant.

Civil Action No. 3:17-cv-303 DPJ-FKB

## COMPLAINT

THE PLAINTIFF, Elizabeth A. Russell, individually, and as prospective Class

Representative, on behalf of all of those similarly situated, under Federal Rule of Civil

Procedure 23, files suit against the above-named Defendant, and pleads as follows:

*(JURY TRIAL DEMANDED; AND
REQUEST FOR CLASS CERTIFICATION UNDER F.R.C.P. 23)*

## INTRODUCTION

1. Plaintiff, Elizabeth Russel ("Plaintiff" or "Ms. Russell") brings this action for

herself, and on behalf of all persons in the United States who purchased or leased any

Dodge Dart vehicles[1] equipped with a Fiat C635 manual transmission ("Manual

Transmission") (collectively, "Class Vehicles") designed, manufactured, marketed,

distributed, sold, warranted and serviced by FCA US LLC, a Delaware limited liability

company ("FCA" or "Defendant").

---

[1] On information and belief, these vehicles include, but are not limited to, the following Dodge vehicles: 2012-2016 Dodge Darts.

2.      This case arises out of a defect in the Class Vehicle's manual transmissions that cause the vehicles' clutches to fail and stick to the floor.

3.      FCA designed and marketed its Manual Transmission to be compact and lightweight with gearing optimized to increase fuel efficiency and perform quick, seamless shifts. However, Plaintiff, upon information and belief, allege that the Manual Transmission of the Class Vehicles contains a design defect that causes, among other problems: the clutch pedal to lose pressure, stick to the floor, and fail to engage/disengage gears. Consequently, the vehicles equipped with the Manual Transmission experience stalling, failure to accelerate, and premature failure of the transmission's components, including, but not limited to: the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel (the "Transmission Defect").

4.      On information and belief, the Transmission Defect is caused by a design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel. Further, on information and belief, the Transmission Defect is exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid.

5.      Since 2012, in an effort to address owner complaints regarding the Transmission Defect, FCA has issued Technical Service Bulletins ("TSBs"), customer satisfaction campaigns ("CSCs"), and STAR cases, as detailed below. However, these efforts

have been entirely inadequate in remedying the Transmission Defect. In fact, rather than redesigning the defective components, FCA has perpetuated the Transmission Defect by simply utilizing the same defective components during repairs. Further, Class Vehicle owners experiencing the Transmission Defect must pay for the temporary repairs, often totaling over $2,000.

6. Additionally, FCA refuses to pay for any repair costs associated with the collateral damage caused by the Transmission Defect, including, but not limited to: the recurring replacement of the clutch slave cylinder and release bearing, clutch disc and pressure plate, and flywheel.

7. Manual transmissions use a driver-controlled clutch. By pressing and releasing a foot pedal, the driver engages and disengages the engine from the transmission, allowing the vehicle to travel smoothly while the driver manually changes gears. When the clutch pedal is depressed, the engine and the transmission are disconnected so that the engine can continue to run even while the car is stationary. When the clutch pedal is released, the engine and the shaft from the engine are directly connected. A properly functioning clutch pedal is essential for proper vehicle operation, i.e. starting, accelerating, decelerating, reversing, and parking.

8. The Class Vehicles are equipped with a hydraulic clutch system. This system engages and disengages the clutch using hydraulic pressure. Depressing the clutch pedal develops hydraulic pressure in the clutch master cylinder, and ultimately causes the clutch disc to release. The figure, below, shows a typical clutch hydraulic system, which consists of

a clutch master cylinder (2), slave cylinder (3), and an interconnecting hydraulic hose. Clutch

hydraulic fluid is supplied by the brake system via the brake master cylinder reservoir (1):



9.      A vehicle equipped with a manual transmission should function in a manner

that the driver expects, *i.e.*, it should start, accelerate, decelerate, reverse, and park as the

driver operates the clutch. However, the Manual Transmission does not function as expected

and is instead plagued by numerous problems and safety concerns.

10.     On information and belief, the Dodge Dart vehicles equipped with the

Manual Transmission have the same or substantially identical transmissions, and the

Transmission Defect is the same for all Class Vehicles.

11.     The Transmission Defect causes unsafe conditions, including, but not limited

to: drivers of the Class Vehicles' inability to shift gears or maneuver the clutch pedal, thereby

rendering the vehicle unable to accelerate and decelerate, often while the vehicle is already in

motion. These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration. As an example, these conditions make it difficult to maintain appropriate speeds, safely change lanes or merge into traffic because Plaintiff and Class Members' vehicles have lost power and failed to accelerate when they attempted to change lanes and/or merge onto the highway.[2] These conditions also caused Plaintiff and Class Members to have difficulty safely bringing their vehicles to a stop or parking their vehicles.

12.     On information and belief, the Transmission Defect also causes premature wear to the Manual Transmission and its related components, which results in premature clutch system or transmission failure and requires expensive repairs, including replacements of the clutch master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc and pressure plate, and flywheel.

13.     Defendant knew, or should have known, that the Class Vehicles and the Manual Transmission contained a design defect that adversely affects the drivability of the Class Vehicles and causes safety hazards, in part, because the same concerns were expressed regarding the 2011-2012 model years Dodge Journey that had the same Manual Transmission as the Class Vehicles.

---

[2] *See*, for example, this 2014 Dart owner's complaint to the National Highway Traffic Safety Administration ("NHTSA"): (2014 Dodge Dart 4/9/2015) PURCHASED A 2014 DODGE DART USED WITH A 6 SPEED. THIS INCIDENT HAPPENED JUST THREE WEEKS AFTER I PURCHASED IT. I NOTICED IT STARTED TO SLIP AND WHILE DRIVING DOWN THE HIGHWAY I HEARD A NOISE, CAR LOST POWER AND SMOKE STARTED POURING OUT FROM UNDER THE HOOD. I HAD IT TOWED TO THE DEALERSHIP WHERE I WAS INFORMED THAT SOMETHING FAILED IN THE CLUTCH, BLOWING A HOLE THROUGH THE TRANSMISSION. THIS ALL HAPPENED WITHIN A MINUTE OR SO WHILE DRIVING AT HIGHWAY SPEEDS. (Safercar.gov, *Search for Safety Problems* (May 19, 2016), http://www.odi.nhtsa.dot.gov/owners/Search SafetyIssues).

14.     On information and belief, Defendant's corporate officers, directors, or managers knew about the Transmission Defect and failed to disclose it to Plaintiff and Class Members, at the time of sale, lease, repair, and beyond.

15.     In fact, on or around January 20, 2012, Chrysler issued a Service Bulletin "06-001-12"[3] for the 2011-2012 Dodge Journey vehicles equipped with the Fiat C635 Manual Transmission. The Service Bulletin stated that the clutch pedal was inoperative in some vehicles.

16.     Further, in or around November 2012, FCA issued service bulletin 10051770-2112 informing dealers that certain 2013 Dodge Dart vehicles were equipped with defective clutch slave cylinders and could cause a hydraulic fluid leak, which leads to a pressure loss in the clutch system and failure of the clutch pedal. FCA instructed its dealers to replace the clutch slave cylinder in the affected vehicles.

17.     Then, on or around August 15, 2014, FCA released STAR case number S1406000001 to its dealers addressing an issue in Dodge Dart vehicles equipped with the Manual Transmission where the "Clutch Pedal Does Not Return (Remains on the Floor) After Depressing the Pedal." FCA instructed its dealers to inspect the clutch pedal and replace the clutch master cylinder and reservoir hose, if necessary.

18.     Additionally, on or around January 2016, FCA extended the clutch master cylinder and reservoir hose warranty period due to 2012-2016 Dodge Dart vehicles exhibiting a "loss of clutch pedal operation including limited pedal travel and limited clutch disengagement." FCA also provided reimbursement for Dodge Dart owners who

---

[3] The same bulletin is referred to as "2011 Dodge Journey Power Train Service Bulletin 329136" and "2012 Dodge Journey Power Train Service Bulletin 329136."

experienced the clutch issues mentioned and previously paid for clutch master cylinder

repairs. On information and belief, the campaign neither fixed the Transmission Defect, nor

did it actually reimburse, all owners affected by the Transmission Defect for repairs

performed on the clutch master cylinder and reservoir hose.

19.     Because FCA will not notify Class Members that the Manual Transmission is

defective, Plaintiff and Class Members (as well as members of the general public) remain

subject to dangerous driving conditions that often occur without warning.

20.     This Transmission Defect was inherent in each Dodge Dart's Manual

Transmission and was present in each Dodge Dart Manual Transmission at the time of sale.

21.     FCA knew about, and concealed, the Transmission Defect present in every

Class Vehicle, along with the attendant dangerous safety and driveability problems, from

Plaintiff and Class Members, at the time of sale, lease, and repair and thereafter. In fact,

instead of repairing the defects in the Manual Transmission, FCA either refused to

acknowledge their existence, or performed repairs that simply masked the defects.

22.     If Plaintiff and Class Members knew about these defects at the time of sale or

lease, Plaintiff and Class Members would not have purchased or leased the Class Vehicles –

or they would have paid significantly less for them.

23.     Due to their reliance on Defendant's omissions, owners and/or lessees of the

Class Vehicles suffered an ascertainable loss of money, property, and value of their Class

Vehicles, including, but not limited to: out-of-pocket costs related to repairs to the Manual

Transmission. Additionally, as a result of the Transmission Defect, Plaintiff and Class

Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

## THE PARTIES

*(The Plaintiff)*

24.     Plaintiff, Elizabeth Russell, is a Mississippi citizen who resides in Clinton, Mississippi, and who may be served via her counsel-of-record in this matter.

25.     In early 2013, Ms. Russell, the Plaintiff, purchased a new 2013 Dodge Dart from Weaver Motors-Kirbyville ("Weaver Motors"), an authorized FCA dealer in Kirbyville, Texas. Ms. Russell's vehicle was equipped with a Manual Transmission.

26.     Plaintiff purchased her vehicle primarily for personal, family, or household use. FCA manufactured, sold, distributed, advertised, marketed, and warranted the vehicle.

27.     Passenger safety and reliability were material factors in Plaintiff's decision to purchase her vehicle. Prior to purchasing her vehicle, Plaintiff, and her father, spent time researching the Dodge Dart on Dodge's corporate website. Based on her research, Plaintiff reasonably believed that the Dodge Dart would be a safe and reliable vehicle. Plaintiff, with her father, also test drove her vehicle with a dealership salesperson prior to purchase.

28.     Had FCA disclosed its knowledge of the Transmission Defect before she purchased her vehicle, Plaintiff would have seen such disclosures and been aware of them. Indeed, FCA's omissions were material to Ms. Russell. Like all members of the Class, Ms. Russell would not have purchased her Class Vehicle, or would have paid much less for it, had she known of the Transmission Defect.

29.     Since purchasing her Dodge Dart, Ms. Russell has experienced symptoms of the Transmission Defect, including the clutch failing to engage gears and stalling. On or around April 2017, with approximately 60,000 miles on the odometer, Ms. Russell brought her vehicle to the Mak Haik dealership in Jackson, Mississippi, complaining that the vehicle's clutch frequently failed to engage gears and upon shifting, would fail to accelerate. This visit to the Service Center of the Mak Haik dealership was the first of eight service visits that Ms. Russell was required to make to have the Transmission Defect corrected. The service technicians that inspected the vehicle ultimately found that the clutch assembly, flywheel, and slave cylinder were overheated and worn. The technicians have, collectively, replaced the clutch assembly, flywheel, and slave cylinder of Ms. Russell's 2013 Dodge Dart at a total out-of-pocket cost of $1,587.38 to Ms. Russell.

30.     A copy of the seven invoices reflecting the repair work performed on her 2013 Dodge Dart to fix its Transmission Defect are attached, and incorporated into, this Complaint as Collective Exhibit "1", Pages 1-7.

31.     At all times, Ms. Russell, like all Class Members, has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

*(The Defendant)*

32.     Defendant, FCA US, LLC, is a limited liability company organized and in existence under the laws of the State of Delaware and registered to do business in the State of Mississippi. FCA US, LLC's Corporate Headquarters are located at: 1000 Chrysler Drive, Auburn Hills, Michigan 48326. FCA US, LLC, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class Vehicles, nationwide

and in Mississippi. FCA US, LLC, is the warrantor and distributor of the Class Vehicles in the United States.  FCA US, LLC, may be served with process via its registered agent with the Mississippi Secretary of State: CT Corporation System, 645 Lakeland Drive East, Suite 101, Flowood, Mississippi 39232.

33.     At all relevant times, Defendant was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and motor vehicle components throughout both the Jackson, Mississippi, metropolitan area and throughout the United States of America.

## JURISDICTION

34.     This is a class action.

35.     Plaintiff and other members of the Proposed Class are citizens of states different from the home state of Defendant. Complete diversity of state citizenship exists in the defective product suit. Further, and as an separate, independent basis for this Court's jurisdiction in this matter, questions of federal law pertaining to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, are raised by the filing of this Complaint.

36.     On information and belief, aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

37.     Jurisdiction is proper in this Court pursuant to both 28 U.S.C. § 1332(d) and 28 U.S.C. 1331.

## VENUE

38.   FCA, through its business of distributing, selling, and leasing the Class

Vehicles, has established sufficient contacts in this district such that personal jurisdiction is

appropriate. Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

39.   In addition, a substantial part of the events or omissions giving rise to these

claims – and a substantial part of the property that is the subject of this action – are in this

judicial district. Ms. Russell discovered, and suffered the incurred the repair bills stemming

from the Transmission Defect, within the venue of this judicial district.

40.   Venue is proper in this Court under 28 U.S.C. § 1391(a).

## FACTS

41.   Since 2012, FCA has designed, manufactured, distributed, sold, and

leased the Class Vehicles. FCA has sold, directly or indirectly, through dealers

and other retail outlets, thousands of Class Vehicles equipped with the Manual Transmission

in Mississippi and nationwide.

42.   FCA designed and marketed its Manual Transmission to be compact and

lightweight with gearing optimized to increase fuel efficiency and perform quick, seamless

shifts. However, despite FCA's marketing to the contrary, the Manual Transmission contains

a design defect that causes, among other problems: the clutch pedal to lose pressure, stick to

the floor, and fail to engage/disengage gears. As a result, the vehicles equipped with the

Manual Transmission experience stalling, failure to accelerate, and premature failure of the

transmission's components, including, but not limited to, the clutch master cylinder and

reservoir hose, clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel (the "Transmission Defect").

43.     Theoretically, a vehicle equipped with a manual transmission should function in a manner that the driver expects, *i.e.*, it should start, accelerate, decelerate, reverse, and park as the driver operates the clutch. In practice, however, FCA's Manual Transmission is plagued by numerous problems and safety concerns.

44.     On information and belief, the Transmission Defect is caused by a design flaw in the clutch master cylinder wherein the internal and external seals are ineffective in preventing debris from contaminating and prematurely wearing the seals, resulting in the deprivation of hydraulic fluid to the slave cylinder and, thus, causing collateral damage to the vehicle's clutch slave cylinder and release bearing, clutch disc, pressure plate, and flywheel. Further, on information and belief, the Transmission Defect is exacerbated by Defendant's use of a plastic clutch master cylinder, which is prone to corrosion by constant exposure to hydraulic fluid.

45.     The Transmission Defect is inherent in each Dodge Dart's Manual Transmission for model years 2012-2016 and was present in each Dodge Dart's manual transmission at the time of sale.

46.     Dating back to at least January 2012, FCA was aware of the defects of the Manual Transmission. FCA, however, failed to disclose these known defects to consumers. As a result of this failure, Plaintiff and Class Members have been damaged.

**The Transmission Defect Poses an Unreasonable Safety Hazard**

47.     The Transmission Defect causes unsafe conditions, including, but not limited to: drivers of the Class Vehicles' inability to shift gears or maneuver the clutch pedal, thereby rendering the vehicle unable to accelerate and decelerate, often while the vehicle is already in motion. These conditions present a safety hazard because they severely affect the driver's ability to control the vehicle's speed, acceleration, and deceleration. As an example, these conditions make it difficult to maintain appropriate speeds, safely change lanes or merge into traffic because Plaintiff's and Class Members' vehicles have lost power, and failed to accelerate, when they attempted to change lanes or merge onto the highway. These conditions also caused Plaintiff and Class Members to have difficulty in safely bringing their vehicles to a stop, or even parking their vehicles.

48.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the manual transmission. Complaints filed by consumers with the National Highway Traffic Safety Administration ("NHTSA") demonstrate that the defect is widespread and dangerous and that it manifests without warning. The complaints also indicate Defendant's awareness of the problems with the transmission and how potentially dangerous the defective condition is for consumers. The following are some safety complaints relating to the Transmission Defect (spelling and grammar mistakes remain as found in the original) (Safercar.gov, Search for Safety Issues (May 25, 2016), http://www-odi.nhtsa.dot.gov/owners/SearchSafetyIssues/):

**2013 Dodge Dart:**

   a. 2/2/2013 THIS VEHICLE SHIFTS SO BAD AND THAT CARS I'VE DRIVEN THAT WERE 5 - 10 YEARS OLDER SHIFTEDBETTER

THAN THIS . IT DOWNSHIFTS WHILE BRAKING AND SOMETIME IT IS A VERY JERKY DOWNSHIFT .ALSO IT SLAMS/JOLTS INTO FIRST GEAR WHILE ROLLING AT ABOUT 3-5 MILES PER HOUR ONCE THE PEDAL IS PUSHED. IT ALSO IS THE WORST AT CHANGING GEARS DURING STOP AND GO DRIVING BECAUSE IT IS SO JERKY AND BOUNCY AFTER BRAKING THEN ACCELERATING AND I DON'T SEE WHY A CAR THAT IS BRAND NEW SHOULD DO THIS. AFTER TAKING IT TO THE DEALER AND HAVING THEM TELL ME TO BRAKE IT IN FIRST , I HAVE DONE SO AND HAVE 700+ MILES ON IT AND HAVE HAD THEM PERFORM TRANSMISSION FLASH UPDATES WITH NO EFFECT ON THE SHIFTING PROBLEMS. I CAN'T SEE HOW THIS TRANSMISSION( AND ALL PARTS THAT WORK TOGETHER WITH IT )WILL LAST WITH THESE SORT OF THINGS HAPPENING. ALSO IT BOGS OUT BECAUSE IT WON'T DOWNSHIFT WHEN IT SHOULD AND STAYS ATABOUT 1300-1400 RPM'S WHEN IT SHOULD BE ABOUT 4-5000 RPM'S HIGHER . I'VE DRIVEN NEW CARS AND THE DODGE DART 2013 SE 2.0 LITER MODEL SEEMS LIKE IT WASN'T READY YET FOR THE ROAD.THE ACCELERATION IS VERY BOUNCY TOO WHEN IT SHOULD BE A STEADY ACCELERATION. *TR

b. 3/25/2013 WHEN DRIVING DOWN THE HIGHWAY, I ATTEMPTED TO DOWNSHIFT TO CHANGE LANES. THE CLUTCH BASICALLY POPPED AND WENT TO THE FLOOR. I THEN HAD TO SWERVE IN TRAFFIC IN ORDER TO GET OFF THE HIGHWAY. I HAVE A 2013 DART SXT WITH THE 1.4L MULTIAIR ENGINE AND THE 6 SPEED TRANSMISSION. AFTER LOOKING AROUND ON THERE WEB, THIS IS APPARENTLY NOT AN ISOLATED INCIDENT AND MAY ACTUALLY BE A KNOWN ISSUE WITH THE VEHICLES. CHRYSLER NEEDS TO NOT ONLY FIX THIS PROBLEM, BUT IT SHOULD BE RECALLED AS IT CAN HAPPEN AT ANY TIME. I HAVE FOUND THAT SOME VEHICLES HAVE THIS HAPPEN IN AS LITTLE AS THE FIRST FEW DAYS OF OWNERSHIP OR AS IN MY CASE, AFTER A FEW THOUSAND MILES. IT IS DANGEROUS. I WOULD PUT IN THE VIN, BUT THE CAR IS CURRENTLY AT THE DEALERSHIP AS THIS HAPPENED TODAY. THANK YOU. *TR

c. 8/8/2013 ON THREE SEPARATE OCCASIONS WHEN I AM IN TRAFFIC AND HAVE TO DO A LOT OF START/STOP THE CAR STALLS, WILL NOT GO INTO GEAR AND START SMOKING. IT SMELLS AS IF THE CLUTCH IS BURNING AND THE CAR WILL NOT GO INTO GEAR. I HAVE TO PULL OVER FOR ABOUT 30MIN TO AN HOUR TO STOP THIS FROM CONTINUING. THIS IS A BRAND NEW CAR AND I HAVE TAKEN IT TO THE DEALER AND THEY OF COURSE CANT DUPLICATE THE PROBLEM AND THE

TECH IS TELLING ME THE CLUTCH IS OVERHEATING BECAUSE OF USER ERROR. I HAVE BEEN DRIVING A STICK SHIFT FOR ABOUT 15 YEARS AND HAVE NEVER HAD ANY PROBLEMS WITH MY OTHER STICK SHIFTS LIKE THIS ONE. EVERYONE AROUND ME CAN SEE THE CAR SMOKING AND MY DAUGHTER IS SCARED TO DEATH TO GET BACK IN THE CAR BECAUSE SHE HAS EXPERIENCED THIS TWICE NOW AND SHE IS ONLY 4 YEARS OLD SHE THINK THE CAR IS GOING TO CATCH ON FIRE. I SHOULD NOT HAVE TO PULL OVER FOR AN HOUR EVERYTIME I AM IN TRAFFIC. I LIVE IN A CITY WHERE THAT IS NOT PREVENTABLE. THERE HAS GOT TO BE SOMETHING THAT CAN BE DONE ABOUT THIS. *TR

d. 8/20/2013 1. CLUTCH STARTED TO LOSE RESISTANCE COUPLE TIMES A MONTH IN TWO LAST MONTHS. NOW ALMOST EVERY DAY AFTER LONG TIME NOT USING IT. IT FREELY GOING DOWN, SOMETIMES STUCK IN THE HALF WAY OUT AND HAVE TO BE PULLED UP. 2. BRAKES STARTED LOSE RESISTANCE RECENTLY ALSO AFTER LONG TIME NOT TO BE USED (1 OR MORE HOURS) SPECIALLY IN THE MORNING. IT FREELY GOING DOWN HALF WAY PRODUCING AIR BLOW SOUND. AFTER A FEW TIMES PUSHING PEDAL DOWN AIR BLOW STOPS AND RESISTANCE GETS OK. BEHIND OF BRAKE PEDAL IT FEELS SOME KING OF LIQUID. 3. ACCELERATION AT HIGH SPEED TAKES LONGER TIME THEN IT WAS BEFORE AND REQUIRES TO SWITCH TO LOWER GEAR. (TURBO PROBLEM?) 4. MPG DECREASED. ON THE SAME WAY TO AND BACK TO WORK USUALLY IT WAS 32-33 MPG. NOW IT GETS 28-29 TODAY BROUGHT CAR TO DEALER. AFTER A WHOLE DAY OF INSPECTION NOTHING WRONG WAS FOUND. *TR

e. 9/8/2013 WHEN I GO TO SHIFT FROM 1ST TO 2ND GEAR THE CLUTCH PEDAL STAYS DEPRESSED, THIS KEEPS THE CAR IN NEUTRAL AND LEAVING ITUNABLE TO DELIVER POWER TO MANEUVER.

f. 9/12/2013 CLUTCH PEDAL DOES NOT ALWAYS COME ALL THE WAY BACK UP. I HAVE TO PULL IT UP WITH MY FOOT. I CAN TELL IT DOES NOT HAVE THE CLUTCH ENGAGED TO BURN IT OUT. JUST A IRRITATING THING TO HAVE TO DO ON A BRAND NEW CAR. TOOK IT TO THE DEALERSHIP FOR ANOTHER ISSUE AND HAD THEM CHECK IT. THEY COULD NOT GET IT TO STICK. AND SINCE CHRYSLERS SYSTEM WAS DOWN THEY DIDN'T KNOW WHAT TO LOOK AT. THIS HAPPENS AND RANDOM TIMES. THIS MORNING IT HAPPENED. WHEN I WENT TO PUSH THE CLUTCH DOWN I COULD TELL THERE WAS NO RESISTANCE FOR A FEW INCHES. WHEN I RELEASED THE

CLUTCH IT ONLY CAME PART WAY UP AGAIN. BIGGEST FRUSTRATION IS THE TECH'S CAN NOT PROBLEM SOLVE ANYTHING WITH OUT A COMPUTER TELLING THEM WHAT TO DO. I MADE A FEW SUGGESTIONS ON WHAT TO CHECK BUT THEY HAD NOT CLUE. SINCE THIS IS THE FIRST YEAR FOR THIS CAR I DO EXPECT BUGS IN THE SYSTEM. HOWEVER THEY SHOULD BE PREPARED TO PROBLEM SOLVE THIS PROBLEMS. I SHOULD NOT HAVE TO MAKE SUGGESTIONS OR PROBLEM SOLVE IT MYSELF. *TR

g. 10/24/2013 PRESSED IN CLUTCH PEDAL TO START VEHICLE. AFTER CAR STARTED, TRIED TO TAKE CAR OUT OF GEAR BUT IT WOULDN'T BUDGE. ALSO, THE CLUTCH PEDDLE WOULD NOT RELEASE, AS IT WAS STUCK TO THE FULLY PRESSED POSITION. CAR BEGAN TO ROLL AS IF IT STARTED TO DISENGAGE BUT THE PEDDLE WAS STILL COMPLETELY PRESSED IN. I IMMEDIATELY TURNED THE CAR OFF. I HAD TO PULL THE CLUTCH PEDDLE UP BY HAND TO GET IT TO DISENGAGE. CALLED DEALER SERVICE, SAID THEY COULDN'T RESOLVE THE ISSUE IF THEY COULDN'T DUPLICATE THE PROBLEM. I'VE NOTICED MANY PEOPLE WITH THE SAME ISSUE. CHRYSLER NEEDS TO ISSUE A RECALL ON THIS. *TR

h. 1/2/2014 ANOTHER TIME CLUTCH WOULD NOT COME UP AND STAYED TO THE FLOOR,CLUTCH FLUID LEAKED

i. 3/12/2014 AFTER SEVERAL HOURS OF STAYING PARKED WITH TRANSMISSION IN GEAR (1ST), VEHICLE WOULD NOT DISENGAGE GEARBOX ON STARTUP. CLUTCH LOST ALL PRESSURE AND THE VEHICLE REQUIRED EXCESSIVE USE OF FORCE TO DISLODGE GEAR SHIFTER. VEHICLE WAS STARTED (CLUTCH DISENGAGED AND IN NEUTRAL) AND VEHICLE BEGAN TO DRIVE FORWARD. CLUTCH/TRANSMISSION REMAINED IN CONTACT WITH ENGINE CAUSING THE VEHICLE TO CONTINUE MOVING FORWARD EVEN WHILE IN NEUTRAL. TRANSMISSION/CLUTCH WOULDN'T REENGAGE WITHOUT EXCESSIVE FORCE. *TR

j. 3/24/2014 BRAND NEW 2013 DODGE DART, SIX SPEED MANUAL TRANSMISSION. BEGAN SMELLING AND SMOKING WHEN TEACHING MY SON HOW TO START ON A HILL. SMOKE WAS COMING FROM FRONT RIGHT SIDE OF TRANSMISSION. SMELLED LIKE A BURNING CLUTCH. THIS OCCURRED AFTER A SHORT PERIOD OF TIME ON THE HILL (LESS THAN FIVE MINUTES). TOOK CAR BACK TO DEALERSHIP TODAY (3-24-14), AND WAS TOLD THERE IS A STICKER ON THE TRANSMISSION THAT BURNS (IT WAS REMOVED TODAY, AND HAS BEEN REMOVED ON OTHER DARTS THEY HAVE WORKED ON FOR

THE SAME PROBLEM), AND THE SMELL AND SMOKE WERE ALSO COMING FROM THE CLUTCH. THEY TEST DROVE THE CAR OVER SOME HILLS NEAR THE DEALERSHIP AND WERE ABLE TO REPRODUCE THE SAME SMELL, BUT SAID IT IS LIKELY CAUSED BY THE NEW CLUTCH AND SHOULD BE DRIVEN 1500-2000 MILES BEFORE BEING CONCERNED ABOUT THIS ISSUE. I HAVE NEVER EXPERIENCED CLUTCH BURNING LIKE THIS, ESPECIALLY AFTER SUCH A SHORT PERIOD OF TIME ON THE HILL, AND I'VE DRIVEN MANY MANUAL CARS/TRUCKS OVER MANY YEARS. *TR

k.  4/17/2014 TL* THE CONTACT OWNS A 2013 DODGE DART. THE CONTACT STATED THAT WHILE TRAVELING VARIOUS SPEEDS, THE VEHICLE FAILED TO RESPOND TO DECELERATION ATTEMPTS. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT CONTACTED ABOUT THE FAILURE. THE FAILURE MILEAGE WAS 3,500.

l.  5/7/2014 I WENT OUT IN THE MORNING TO START THE CAR AND IT WOULD NOT GO INTO REVERSE. THE GEAR STICK FELT STUCK AND I HAD TO HAVE MY HUSBAND COME OUT AND PUT THE CAR INTO NEUTRAL AND ROLL THE CAR BACK SO WE COULD START IT IN FIRST. THIS HAPPENED AGAIN ONE MONTH LATER, ONLY THE CAR WOULD NOT EVEN GO INTO FIRST GEAR. WE HAD IT TOWED TO DEALER AND WERE TOLD WE HAD TO PAY FOR A NEW CLUTCH-IT WAS BURNED OUT. BURNED OUT AT 18,000 MILES. WE PAID FOR A NEW CLUTCH, AND NOW 4MTHS LATER, THE CAR IS DOING THE SAME THING. PROBLEM GOING INTO REVERSE. DEALER CAN FIND NOTHING WRONG WITH IT-I AM SCARED THE CLUTCH WILL BURN OUT AGAIN-NEVER KNOW WHEN THIS CAR WILL LEAVE ME STRANDED. WORST EXPERIENCE EVER. *TR

m.  5/12/2014 WENT TO START MY CAR IN THE MORNING PUSHED THE CLUTCH TO THE FLOOR AND IT DID NOT RETURN, JUST STAYED DEPRESSED AGAINST THE FLOORBOARD. TOOK IT TO THE DEALERSHIP AND THEY SAID EVERYTHING IS FUNCTIONING AS DESIGNED. WELL ITS NOT! I CALLED CHRYSLER CUSTOMER SERVICE AND THEY TOLD ME THE CLUTCH IS ONLY UNDER WARRANTY FOR 12000 MILES. MY PREVIOUS 3 CARS HAVE BEEN MANUAL TRANSMISSIONS AND ALL WENT WELL OVER 100000K WITHOUT ANY CLUTCH ISSUES. MY CAR NOW DOES THIS REGULARLY AT LEAST ONCE EVERY OTHER DAY. I AM EXTREMELY DISAPPOINTED IN DODGE AND THOUGHT THEY WERE "FOCUSING ON QUALITY". THE LACK OF CONCERN BY DODGE REGARDING THIS SAFETY ISSUE IS DOWNRIGHT DISGUSTING. AFTER SPEAKING WITH THE CUSTOMER SERVICE REP SHE STATED SHE WOULD CONTACT

THE DEALERSHIP AND CALL ME TOMORROW. NO CALL, NO E-MAIL. THEN THEY HAVE THE NERVE TO SEND ME A SURVEY ON HOW WAS MY ISSUE RESOLVED. IT WASN'T THAT'S WHY YOU GOT ALL 1'S. WHY DON'T YOU ACTUALLY STAND BY YOUR PRODUCT? *TR

n. 5/18/2014 WENT TO START MY CAR AND THE CLUTCH PEDAL WENT STRAIGHT TO THE FLOOR ALMOST LIKE IT HAD NO FLUID IN THE MASTER CYLINDER AFTER I STARTED THE CAR I HAD TO SIT THERE AND PUMP IT TO FIND FEELING BEFORE I FELT COMFORTABLE DRIVING IT. THIS WAS STRANGE AS I PARK INSIDE A CLIMATE CONTROLLED GARAGE AND THERE IS NOT ANY FLUID LEAKING ON THE GROUND. *JS

o. 6/3/2014 ON MULTIPLE OCCASIONS, WORSE WHEN IT IS HOT OUTSIDE, THE CLUTCH PEDAL WILL BE SOFT AND NOT COME UP OFF THE FLOOR. WHEN THE CLUTCH IS SOFT, I AM NOT ABLE TO SHIFT IN OR OUT OF GEAR. IF THE ENGINE IS ON AND IN GEAR, YOU CANNOT PUMP THE CLUTCH UNTIL THE VEHICLE IS OFF, OR IF YOU MANAGE TO GET IT INTO NEUTRAL. AS I PREFER TO PARK THE VEHICLE IN GEAR, WHEN THE CLUTCH GOES SOFT, IT MAKES IT DIFFICULT, IF NOT IMPOSSIBLE, TO REMOVE THE SHIFTER FROM GEAR TO PREVENT THE CAR FROM MOVING AND HITTING AN OBJECT. I HAVE ALMOST HIT A CONCRETE PILLAR AND DRIVEN THROUGH MY GARAGE WHEN THIS HAPPENS. I GET THE FEELING THE CLUTCH IS NOT FULLY DISENGAGED, DESPITE THE PEDAL STUCK ON THE FLOOR. WITHOUT PARKING IN GEAR, I RUN THE RISK OF THE CAR ROLLING AWAY IF THE PARKING BRAKE FAILS. THERE HAVE BEEN NO LEAKS AND THE DEALER HAS BEEN UNABLE TO LOCATE THE PROBLEM. *TR

p. 6/5/2014 FOR THE PAST YEAR AND A HALF MY CLUTCH HAS BEEN LOSING ALL RESISTANCE. THIS USUALLY HAPPENS WHEN THE VEHICLE IS COLD AND AT TIMES I AM UNABLE TO PUT MY CAR INTO GEAR. SOMETIMES THIS HAS HAPPENED WHILE AT STOP LIGHTS OR EVEN PULLING OUT INTO TRAFFIC. EVERY TIME I TAKE MY VEHICLE TO THE DEALERSHIP AIM TOLD THERE IS NOTHING WRONG. EVENTUALLY THEY REPLACED MY CLUTCH MASTER CYLINDER ABOUT 8 MONTHS AGO THE FIRST TIME. PROBLEM SEEMED TO RESOLVE THEN ABOUT 2 MONTHS AGO IT STARTED DOING IT AGAIN. WENT BACK TO THE DEALERSHIP AND TOLD NOTHING WAS WRONG. AFTER MULTIPLE TRIPS TO DEALERSHIP THEY FINALLY AGREED TO REPLACE MASTER CYLINDER AND DISCOVERED THE SLAVE CYLINDER IS LEAKING. VEHICLE BACK IN THE SHOP FOR THE

PAST WEEK REPLACING SLAVE CYLINDER. ANY PERSPECTIVE DART BUYERS OUT THERE, I REALLY CAUTION AGAINST THIS PURCHASE THIS IS ONLY ONE OF MULTIPLE ISSUES I HAVE HAD. ON A SIDE NOTE, I PURCHASED THIS VEHICLE NEW IN JULY 2012 WITH 120 MILES ON IT. SINCE THEN I HAVE HAD 2 IGNITION COILS REPLACED, 2 CLUTCH MASTER CYLINDERS, SLAVE CYLINDER, 3 TURBOS, CATALYTIC CONVERTER ALL REPLACED. BUYER BEWARE. *TR

q. 6/6/2014 I WENT TO MOVE MY CAR AND THE CLUTCH WAS STUCK TO THE FLOOR OF MY CAR. I COULD NOT GET IT IN OR OUT OF GEAR. SO FAR CHRYSLER HAS REPLACED THE ELECTRICAL/COMPUTER PART, THE PART FOR THE CLUTCH. I JUST FOUND OUT ABOUT THE RECALL FOR THE BRAKE AND TRANSMISSION. LAST MY DOOR IS DARKER THEN THE REST OF THE CAR AND THEY ARE HAVING IT PAINTED. *TR

r. 6/24/2014 2013 DODGE DART. CONSUMER WRITES IN REGARDS TO TRANSMISSION MALFUNCTION, BROKEN TIRE SENSOR AND OTHER VEHICLE PROBLEMS. *SMD THE CONSUMER STATED THE TRANSMISSION HAS BEEN ON GOING SINCE, THE FIRST DAY THE VEHICLE WAS PURCHASED. APPARENTLY, IT WAS A FACTORY DEFAULT, THAT COULD NOT BE FIXED. THE TRANSMISSION DOWN SHIFTED INTO SECOND GEAR, THE CLUTCH WOULD STICK, THE GEARS WERE GRINDING WHEN IN REVERSE AND A METALLIC NOISE WAS HEARD WHEN DOWN SHIFTING IN ANY GEAR THE DEALER REPLACED THE SECOND GEAR AND SYNCHRONIZERS. THE SUN VISOR NO LONGER STAYED IN ITS POSITION.

s. 7/1/2014 I HAVE FILED A COMPLAINT IN SEPT. 2013 THE INCIDENT NUMBER WAS 10542516. I MY VEHICLE WAS TOWED TO THE NEAREST DEALERSHIP FOR REPAIR. THE CLUTCH PEDAL WOULD NOT RETURN ONCE DEPRESSED. IT WAS DETERMINED THAT IT WAS THE SLAVE CYLINDER. THAT WAS REPLACED, TAKING OVER A WEEK. THE REMEDIED THE PROBLEM UNTIL THE END OF JUNE 2014 WHEN THE CAR BEGAN DISPLAYING THE SAME PROBLEM. I WAS GETTING ON THE INTERSTATE AND WENT TO SHIFT FROM 2ND TO 3RD AND THE CLUTCH PEDAL REMAINED DEPRESSED ONCE AGAIN. NOT HAVING POWER AT THIS KEY POINT OF ACCELERATION WAS DANGEROUS AND I WAS ALMOST REAR ENDED BY A SEMI. I TOOK THE CAR TO A DEALERSHIP ONCE AGAIN AND IT WAS DETERMINED THE SLAVE CYLINDER WAS THE PROBLEM ONCE AGAIN. I THINK THIS REALLY NEEDS TO BE EXAMINED AS IT CREATES A SERIOUS POTENTIAL FOR INJURY. *TR

t. 7/3/2014 CLUTCH PEDAL DOES NOT RETURN FROM DEPRESSED POSITION. CLUTCH PEDAL IS SOFT AND CLUTCH MECHANISM DOES NOT FUNCTION PROPERLY FOR A FEW MINUTES OF INITIAL OPERATION. AFTER THE INITIAL INCIDENT THIS PROBLEM HAS BECOME MORE FREQUENT AND NOW OCCURS ALMOST DAILY. *TR

u. 7/7/2014 I WAS ACCELERATING FROM A STOPPED POSITION AND WAS SHIFTING INTO FOURTH GEAR WHEN THE CLUTCH PEDAL STAYED DEPRESSED TO THE FLOOR. I HAVE HAD THIS CAR BACK FROM THE DEALER 10 DAYS. IT WAS IN THE SERVICE DEPARTMENT TO CORRECT THE SAME PROBLEM. THIS IS THE THIRD TIME THIS CAR HAS DONE THIS. THE CASE NUMBERS FOR THE FIRST TWO ARE 10542516 AND 10607620. LIKE THE SECOND EPISODE, I WAS LEFT IN A VULNERABLE SITUATION IN WHICH I WAS ALMOST HIT. THE LANES TAPER FROM TWO DOWN TO ONE AND I WAS IN THE INSIDE LANE COMING OUT OF THE TAPER. A TRUCK COMING UP FROM BEHIND WAS UNAWARE TO THE SLOW SPEED OF MY CAR AND I WAS NOT ABLE TO ACCELERATE. HE WAS ABLE TO SWERVE ACROSS THE NO PASSING LINES INTO ANOTHER LANE AND AVOID HITTING THE BACK OF MY CAR. I WAS ABLE TO COAST TO NEXT CROSS ROAD AND JUST MAKE IT OFF THE STATE HIGHWAY. MY VEHICLE WAS TOWED BACK TO THE DEALERSHIP. *JS

v. 7/9/2014 DRIVING AT A AVERAGE SPEED OF 60-70 WHEN PASSING ON THE HWY MY CLUTCH PEDAL WAS STUCK TO THE FLOOR AND I HAD TO PULL IT OUT WITH MY FOOT TO CHANGE GEARS. THIS NOW HAS STARTED HAPPENING ON TAKE OFFS NOW. THE DEALER HAS ALL READY REPLACE IT ONCE AND IT IS STILL HAVING THE SAME ISSUE. APPARENTLY THE PART IS ON BACK ORDER BECAUSE THEY CAN NOT KEEP ENOUGH IN STOCK FOR THE CARS THAT ARE HAVING THIS REPLACED. IT TOOK 21 DAYS IN ORDER FOR MY PART TO ARRIVE AT THE DEALERSHIP. NOW I HAVE TO WAIT LONGER FOR A NEW ONE TO REPLACE THE ONE THAT WAS PUT IN. THIS CAN CAUSE A SERIOUS ISSUE ALMOST LIFE THREATENING BECAUSE YOU COULD BE PULLING OUT INTO TRAFFIC AND GOD FORBID YOU CAN'T REACT FAST ENOUGH. *JS

w. 8/29/2014 THE CLUTCH PEDAL STUCK TO THE FLOOR PREVENTING ME FROM BEING ABLE TO SHIFT OUT OF GEAR OR DISENGAGE THE ENGINE FROM THE TRANSMISSION. BECAUSE I AM A MECHANIC I WAS ABLE TO AVOID A CRASH. THIS IS A COMPLEX ISSUE AND MOST CONSUMERS WILL FREAK OUT IF THEY CAN NOT PUT THERE VEHICLE IN NEUTRAL AND

THE ENGINE STALLS FROM THEM TRYING TO USE THE BRAKES. *TR

x.  10/14/2014 MY FOOT WAS ON MY CLUTCH AND BRAKE I THEN STARED THE CAR....THE CAR LUNGE FORWARD INTO SOME BUSHES .. AFTER THAT THE CLUTCH STAYED ON THE FLOOR UNABLE TO SHIFT IN REVERSE TILL I PUMPED BRAKE AND CLUTCH I ACTUALLY LIFTED THE CLUTCH UP WITH MY FOOT TO USE IT TO SHIFT. *TR

y.  1/13/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. UPON STARTING THE VEHICLE OR DURING COLD WEATHER TEMPERATURES, THE CLUTCH FAILED TO SHIFT PROPERLY. THE CONTACT MENTIONED THAT THE CLUTCH NEEDED TO BE PUMPED IN ORDER TO SHIFT PROPERLY. THE VEHICLE WAS TAKEN TO DEALER WHERE THE FAILURE WAS UNABLE TO BE DUPLICATED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 12,000.

z.  1/22/2015 I WAS DRIVING AT ABOUT 40 MPH AND ABRUPTLY THE ENGINE STALLED AND THE CLUTCH WENT TO THE FLOOR AND THE VEHICLE REFUSED TO CHANGED GEARS OR MOVE. I ALLOWED IT TO VEER TO THE SIDE TO ESCAPE BEING REAR ENDED OR CRASHED FROM BEHIND. I HAD NO CONTROL OF THIS CAR. *TR

aa. 2/19/2015 I PURCHASED CAR BRAND NEW. HAVE DRIVEN MANUAL TRANSMISSIONS FOR 40 YEARS AND HAVE NEVER RUINED A CLUTCH OR ANY PART OF THE TRANSMISSION. I WAS DRIVING ALL THE ROAD AND GOING UP A HILL AND ATTEMPTED TO DOWNSHIFT TO GET UP THE STEEP HILL. THE CLUTCH WENT DOWN TO THE FLOOR AND THE SHIFTER WOULDN'T ALLOW ANY SHIFTING. I VEERED OFF THE ROAD AND CALL TOW TRUCK. I HAD CAR TOWED TO LANDMARK DODGE, MORROW, GA 30260, AND AFTER WEEKS THEY SAY THE ENTIRE TRANSMISSION WAS BURNED UP AND BROKEN INTO PIECES?? WELL, 1ST WEEK THEY ORDERED WRONG PART, 3 WEEK THEY SAID THEY HAD TO REMOVE THE ENTIRE TRANSMISSION AND TODAY (4 WEEKS LATER) THEY SAID THEY FEEL IT IS A CASE OF CUSTOMER ABUSE AND WANT 1500.00 TO REPAIR. I TOLD THEM UP FRONT A CERTIFIED TECHNICIAN LOOKED AT THE ISSUE PRIOR TO ME HAVING PULLED TO THEM AND HE SAID, "THIS IS DEFECTIVE". HE ALSO PRINTED OUT INFO FROM THE INTERNET OF OTHER DODGE DART 2012-2013 WITH THE VERY SAME ISSUE. CLUTCH TO THE FLOOR, AND EVEN A CLASS ACTION SUIT. I WILL HAVE TO GET IT FIXED

bb. 4/15/2015 CLUTCH WENT COMPLETELY TO THE FLOOR AND HAD TO VEER CAR INTO A TERRAIN IN ORDER To AVOID BEING RUN OVER BY DUMP TRUCK DIRECTLY BEHIND. THERE WAS NO WARNING AND CAR IS FAIRLY NEW. (WAS PURCHASED NEW). QUICK INVESTIGATION, AND THERE IS A LAW SUIT WITH CHRYSLER INDICATING THEY ARE AWARE OF THIS DEFECT BUT THEIR DEALERSHIPS ARE NOT AND REFUSED TO REPAIR WITHOUT CHARGING. INSISTED I TAKE CAR TO ANOTHER PLACE THAT REALLY WORKS ON DODGES (???). THIS LOST OF GEAR SHIFTING IS GOING TO GET SOMEONE KILLED! UNFORTUNATELY IT IS HARD TO REACH ME BY TELEPHONE BUT I WOULD REALLY LIKE TO HAVE SOME DETAILS AS TO HOW TO HANDLE THIS ISSUE. I HAD AN INDEPENDENT DEALER "WHO REALLY WORKS ON DODGES" TO REPAIR AND THEY CONFIRMED THE CLUTCH WAS DEFECTIVE AND CAUSED IT TO CRASH AND BURN. I'M NOT THE ONLY ONE WHO HAS EXPERIENCED THIS.

cc. 5/13/2015 I WENT TO GET IN MY CAR TO GO TO WORK AND WHEN I STARTED MY CAR THE CLUTCH PEDAL WENT TO THE FLOOR AND WOULD NOT COME BACK UP. THE VEHICLE GOT STUCK IN FIRST GEAR UNTILL I MANUALLY BENT DOWN AND PULLED THE CLUTCH PEDAL UP AND TURNED THE CAR OFF SEVERAL TIMES. WHEN I SOPKE TO DODGE THEY ACTED LIKE THEY HAD NEVER HEARD OF THIS ISSUE (WHICH I KNOW IS NOT TRUE FROM VARIOUS FORUMS AND COMPLAINTS IVE SEEN). NOW I AM WORRIED ABOUT THE SAFTEY OF THE CAR BECASUE IF THIS HAPPENS WHILE IM ON THE ROAD AND NOT PARKED I OR SOMEONE COULD GET SERIOUSLY INJURED. THE DODGE DEALER I SPOKE WITH SAID TO FIX THE ISSUE I WOULD HAVE TO REPLACE THE MASTER CYLINDER, SLAVE CYLINDER, AND REPLACE THE CLUTCH. I DON'T FEEL I SHOULD HAVE TO WORRY ABOUT THIS THERE SHOULD BE A RECALL ISSUED.

dd. 5/20/2015 CLUTCH PEDAL DEPRESSED AND WOULD NOT RETURN TO NORMAL POSITION. PRESSING DOWN ON CLUTCH PEDAL WOULD NOT DISENGAGE THE CLUTCH FROM THE FLYWHEEL SO CONTINUED TO ATTEMPT TO MOVE FORWARD REQUIRING FOOT MORE STRONGLY ON THE BRAKES. THIS WASN'T THE ONLY TIME, AND SEEMS TO OCCUR AFTER THE VEHICLE HAS BEEN SITTING A FEW HOURS. ITS GETTING FREQUENT ENOUGH THAT I'M GOING TO TRY TO TRADE THE VEHICLE IN. I DON'T TRUST CHRYSLER/DODGE PRODUCTS ANY MORE AND THEIR QUALITY IS GOING DOWN HILL WITH THEIR DRIVE BY WIRE VEHICLES. FOR THE RECORD, 90% OF MY

MILEAGE IS ALL HIGHWAY AND I DON'T "POP" THE CLUTCH TO PEAL OUT AT STOP LIGHTS AND THE LIKE. SEARCHES OF THE INTERNET ARE FINDING MORE AND MORE POSTS WITH CLUTCH AND TRANSMISSION PROBLEMS.

ee. 6/3/2015 WHEN FIRST STARTED ON A COOL OR COLD MORNING, THE CLUTCH ON THE 2013 DODGE DART WILL NOT HAVE ANY PRESSURE AND STICK TO THE FLOOR. THE CLUTCH PEDDLE WOULD HAVE TO BE PHYSICALLY PULLED UP FROM THE FLOOR AND PUMPED TO DEVELOP ANY PEDDLE. THE VEHICLE WAS TAKEN TO THE DEALER THAT COULD NOT REPLICATE THE PROBLEM NOR WOULD MAKE ANY INDICATION TO MAKE THE REPAIR. THE NEXT WEEK (AROUND MAY 18, 2015), THE MANUAL TRANSMISSION WAS PARKED IN FIRST GEAR AND WHEN THE CLUTCH WAS DEPRESSED, THERE WAS LITTLE TO NO PEDDLE. THE CAR STARTED AND BEGAN TO LUNGE FORWARD AND STOPPED. THE CLUTCH ALMOST STUCK TO THE FLOOR. . OTHER TIMES, THE CAR IS PARKED IN NEUTRAL AND THE CAR WILL NOT ALLOW THE DRIVER TO SHIFT INTO GEAR. THERE IS FLUID VISIBLE ON TOP OF THE TRANSMISSION WHICH IS SUSPECTED BY THE OWNER TO BE FROM THE HYDRAULIC CLUTCH. CHRYSLER IS AWARE OF THIS PROBLEM AND ARE BEING SUED IN THE STATE OF CALIFORNIA OVER OTHER CLAIMS. THIS IS A SAFETY ISSUE WITH THESE CARS AND THE VOLUME OF COMPLAINTS FOR THE SAME ISSUE IS INDICATIVE OF A LARGER PROBLEM.

ff.  6/8/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. WHILE DRIVING AT APPROXIMATELY 50 MPH, THE CLUTCH PEDAL WAS DEPRESSED AND FAILED TO RESPOND WITHOUT WARNING. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE MASTER SLAVE CYLINDER NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE RECURRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 1,200.

gg. 6/8/2015 TL* THE CONTACT OWNS A 2013 DODGE DART. WHILE REVERSING OUT OF A PARKING LOT AT 5 MPH, THE CLUTCH FAILED TO SHIFT OUT OF REVERSE TO GO INTO FIRST GEAR. THE FAILURE RECURRED ONCE. THE VEHICLE WAS TAKEN TO A DEALER, BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 24,000.

hh. 6/10/2015 2013 DART 2.0 LITER, 6 SPEED MANUAL TRANS. CLUTCH PEDAL GOES TO FLOOR WITH NO RESISTANCE AND WILL NOT DISENGAGE CLUTCH. PULLING THE PEDAL UP WITH FOOT

AND PUMPING IT RESTORES FUNCTION UNTIL THE CAR IS PARKED AT WHICH TIME, THE SYSTEM BLEEDS DOWN AGAIN AND THE PEDAL GOES TO THE FLOOR WITHOUT DISENGAGING THE CLUTCH. PROBLEM IS MARKEDLY WORSE IN HOT WEATHER. RESPONSE FROM CHRYSLER ON RECTIFICATION ACTION IS AWAITING FOLLOWING INQUIRY BY MYSELF.

ii. 6/12/2015 I WENT AND ATTEMPTED TO START THE CAR. cAR WOULD NOT START. IT WAS LIKE THE CLUTCH WOULD NOT ENGAGE. RELEASED THE CLUTCH AND REENGAGED, AND IT STARTED. DURING SHIFTS, IT DIDNT WANT TO GO INTO 3 OR 6TH GEARS. IT WAS LIKE THE CLUTCH IS NOT ENGAGING ONCE AGAIN. TOOK THE CAR BACK TO WHERE I PURCHASED IT, PERFORMANCE DODGE, AND THEY TOLD ME THAT CHRYSLER KNOWS OF THE ISSUE BUT CHRYSLER STAR WILL NOT FIX IT. I ASKED HOW CAN THEY KNOW THAT THE CLUTCH HAS ISSUES, BUT THEY ARE NOT GOING TO FIX IT. THE EMPLOYEE INFORMED ME THAT THEY ALL ARE LIKE THIS. CHRYSLER KNOWS OF THE CLUTCH ISSUES DUE TO ALL THE COMPLAINTS, BUT THEY STILL RISK THE LIVES OF THE INDIVIDUALS WHO PURCHASED THE VEHICLE BY NOT REPLACING THE CLUTCH. I HAVE ALSO HAD ISSUES WITH MY WINDOWS NOT ROLLING UP OR DOWN AND THE RADIO KEEPS RESETTING ITSELF. THEY DO UPDATES, BUT IT DOES NOT FIX THE RADIO ISSUE. THE LAST TIME I TOOK IT FOR THE UPDATE, THE UPDATE WOULDNT EVEN LOAD TO FIX THE ISSUE. HOW CAN A COMPANY KNOW OF ISSUES BUT REFUSE TO FIX THEM?

jj. 6/14/2015 I DEPRESSED THE CLUTCH TO START THE ENGINE AND WHEN IT STARTED THE CAR BEGAN TO MOVE EVEN THOUGH THE CLUTCH PEDAL WAS FULLY DEPRESSED. I HAD TO TURN THE ENGINE OFF TO STOP THE CAR FROM MOVING AND THE CLUTCH PEDAL REMAINED ON THE FLOOR. AFTER A FEW MORE ATTEMPTS IT STARTED TO WORK CORRECTLY. IT NOW DOES THIS EVERY TIME IT IS PARKED FOR A FEW HOURS. VERY DANGEROUS DEFECT THAT NEEDS TO BE RECALLED BY CHRYSLER.

kk. 6/20/2015 CLUTCH PEDAL KEPT GETTING STUCK IN POSITION AND WOULD NOT DISENGAGE.

ll. 7/20/2015 WHEN GETTING INTO MY CAR IN THE MORNING OR AFTER WORK (ANY TIME THE CAR HAS BEEN SITTING FOR A WHILE), THE CLUTCH PEDAL GOES STRAIGHT TO THE FLOOR AND DOESN'T COME BACK UP. I CANNOT PUT MY CAR INTO GEAR OR EVEN START THE CAR. I HAVE TO PUMP THE CLUTCH PEDAL FOR A FEW MINUTES UNTIL I HAVE A LITTLE PRESSURE

TO EVEN START MY CAR. MY CAR STALLED OUT TWICE FROM THIS WHEN ENTERNG A PARKING GARAGE AND I ALMOST HIT ANOTHER CAR BECAUSE OF THIS. AFTER DRIVING THE CAR FOR 2-3 MILES THE CLUTCH SEEMS TO COME BACK TO NORMAL PRESSURE AND I CAN SHIFT FINE AT THAT POINT.

mm.    7/27/2015 I HAVE A 2013 DODGE DART RALLYE. I BOUGHT IT USED IN JANUARY 2015. IT HAS THE 1.4 MULTI AIR TURBO WITH 6 SPD MANUAL TRANSMISSION. MY PROBLEM IS JUST ABOUT EVERY MORNING OR AFTER THE CAR SETS FOR A FEW HOURS WHEN I TRY TO START THE CAR I PUSH THE CLUTCH PEDAL IN TO START THE CAR AND I GO TO PUT THE CAR IN GEAR AND IT WON'T GO IN GEAR WITH MY CLUTCH PEDAL TO THE FLOOR AND THE CAR TRYS TO MOVE WHEN I TRY TO PUT IT IN GEAR SO I LET OFF THE CLUTCH AND IT STICKS HALF WAY TO THE FLOOR SO I HAVE TO PUMP IT FOR ABOUT 2 MINUTES OR UNTIL THE CAR WARMS UP JUST TO PUT IT IN GEAR I DID RESEARCH ON THIS AND APAIRENTLY ALOT OF PEOPLE WITH THIS CAR HAVE BEEN HAVING THIS SAME PROBLEM AND CHRYSLER WANTS TO CHARGE ME JUST TO TAKE A LOOK AT IT BECAUSE IT IS OUT OF WARRANTY THIS ISSUE REALLY NEEDS TO BE LOOKED INTO.

nn. 8/6/2015 INTERMITTENTLY, THE CLUTCH PEDAL HAD DROPPED TO THE FLOOR WHEN DEPRESSED AND NOT RETURNING WITHOUT PUMPING THE PEDAL PRIOR TO STARTING THE ENGINE. THIS WAS BECOMING COMMON AFTER THE CAR WAS NOT IN OPERATION OVERNIGHT BUT ON 6-AUG-15 THE WHILE DRIVING AT HIGHWAY SPEEDS PRIOR TO EXITING A LIMITED ACCESS HIGHWAY WITH THE PEDAL DEPRESSED TO THE FLOOR THE ENGINE DID NOT DISENGAGE FROM THE TRANSMISSION OR ALLOW THE SHIFTER TO BE MOVE OUT OF GEAR. IT REQUIRED THE PEDAL TO BE PULLED UP MANUALLY WITH THE TOE OF MY SHOE AND PUMPED BEFORE IT ACTUATED THE CLUTCH AND ALLOWED THE CAR TO STOP. AN ACCIDENT WAS NARROWLY AVOIDED ON INTERSTATE 495 DUE TO THIS FAILURE. CHRYSLER WAS CONTACTED REGARDING THE SERVICE BULLETIN M37, TRANSAXIAL SLAVE VALVE DEFECT AND THEY SAID THIS IS A LISTED ISSUE FOR THE CAR/ENGINE BUT NOT FOR THIS VIN. REGARDLESS OF THE BULLETIN'S "COMMITMENT TO SAFETY" THEY WOULD NOT COVER ANY TOWING OR REPAIR.

oo. 8/6/2015 WHEN TRYING TO START THE CAR THE CLUTCH PEDAL WILL GET STUCK DOWN AND NOT ENGAGE. IF THIS HAPPENS WHEN DRIVING IT COULD CAUSE AN ACCIDENT.

pp. 8/14/2015 WHEN I WENT TO TURN MY CAR ON, WHICH IS A MANUAL, MY CLUTCH PEDAL STAYED ENGAGED AND WOULD NOT RELEASE AND MY CAR WOULD NOT TURN OFF. I COULD NOT TURN THE KEY TO TURN THE CAR OFF. I HAD TO WAIT A FEW MINUTES BEFORE THE CLUTCH RELEASED AND I WAS FINALLY ABLE TO TURN MY CAR OFF. WHEN I TRIED AGAIN TO TURN MY CAR ON THE CLUTCH PEDAL ONCE AGAIN STAYED ENGAGED AND WOULD NOT RELEASE BUT I WAS ABLE TO TURN MY CAR OFF THE SECOND TIME. AND TRY AGAIN AND AGAIN UNTIL THE CLUTCH WOULD RETURN AFTER I TURNED THE CAR ON

qq. 8/26/2015 WHEN TRYING TO START THE CAR, THE CLUTCH PEDAL WILL GET STUCK DOWN AND NOT ENGAGE INTERMITTENTLY. THE CLUTCH PEDAL DROPS TO THE FLOOR WHEN DEPRESSED AND NOT RETURNING WITHOUT PUMPING THE PEDAL PRIOR TO STARTING THE ENGINE. THIS IS BECOMING COMMON AFTER THE CAR IS NOT IN OPERATION OVERNIGHT

rr. 8/27/2015 THIS HAS BEEN AN ONGOING-INTERMITTENT PROBLEM/ISSUE. THE HYDRAULIC CLUTCH SYSTEM (MANUAL TRANS) WILL LOSE PRESSURE WHICH MEANS THAT THE CLUTCH PEDAL WILL GO TO THE FLOOR AND I CAN'T SHIFT THE TRANSMISSION. AT TIMES IT IS ONLY DOING THIS FIRST THING IN THE MORNING BUT WILL GET PRESSURE AFTER "PUMPING IT UP" A FEW TIMES. IT WILL LOSE PRESSURE AFTER DRIVING FOR A PERIOD OF 15-20 MINUTES MEANING THAT WHEN COMING TO A STOP I AM UNABLE TO DOWNSHIFT. ONCE STOPPED, WHEN IT HAS LOST PRESSURE, IF YOU LEAVE THE TRANSMISSION IN FIRST GEAR, OR REVERSE, IT WILL MOVE WHEN THE IGNITION KEY IS PUT INTO THE START MODE WHEN THE CLUTCH PEDAL IS FULLY DEPRESSED! THERE HAVE NEVER BEEN ANY FLUID LEAKS OR SIGNS THAT THE LEVEL HAS GONE DOWN. I HAVE SEEN ON A DODGE DART OWNERS WEBSITE THAT THIS IS A PROBLEM THAT OTHERS HAVE HAD AS WELL.

ss. 9/29/2015 ONGOING CLUTCH/HYDRAULIC PROBLEMS HAVE CAUSED ME TO BE IN SEVERAL UNSAFE SITUATIONS. FIRST SAFETY CONCERN WAS DUE TO CAR STALLING WHEN ATTEMPTING TO ACCELERATE FROM A STOP. THERE WERE SEVERAL TIMES THAT IMPROPER CLUTCH ENGAGEMENT CAUSED THE CAR TO JERK AND DIE AT A STOP. SECOND CONCERN WAS FROM DIFFICULTY SHIFTING GEARS IN STOP AND GO TRAFFIC DUE TO CLUTCH NOT ENGAGING FULLY. THIRD CONCERN WAS FROM TOTAL SYSTEM FAILURE (19426

MILES): EXITED INTERSTATE HIGHWAY AND DEPRESSED CLUTCH TO SHIFT TO NEUTRAL. WHILE DEPRESSING THE CLUTCH I HEARD A LOUD POP/CLUNK SOUND AND THE CLUTCH INSTANTLY DROPPED TO THE FLOOR. I THEN STARTED SMELLING THE CLUTCH BURNING AND HAD NO ABILITY TO SHIFT OR ENGAGE GEARS. I WAS LEFT IN THE MIDDLE OF THE ROADWAY AND HAD TO PUSH MY VEHICLE TO A SAFE LOCATION ON THE SHOULDER OF THE ROAD THANKS TO THE HELP OF SOME PEOPLE THAT STOPPED. AFTER TOWING THE VEHICLE TO THE DEALERSHIP FOR REPAIR, I WAS TOLD THE FLYWHEEL, PRESSURE PLATE, AND CLUTCH NEEDED TO BE REPLACED (19,426 MILES). FOURTH CONCERN WAS A FAILURE OF THE CLUTCH (APPROX 34,735 MILES): AFTER BACKING OUT OF A DRIVEWAY THE CLUTCH STUCK TO THE FLOOR AND WOULD NOT RETURN TO THE NORMAL POSITION CAUSING THE INABILITY TO SHIFT. AFTER RESTARTING VEHICLE I HAD TO LIFT CLUTCH BY HAND AND PUMP CLUTCH TO REGAIN HYDRAULIC PRESSURE. I WAS TOLD CLUTCH HAD FAILED AND WAS BLAMED FOR FAILURE FROM RIDING CLUTCH MILEAGE PROBLEMS FIRST REPORTED (I CONTINUED TO MENTION PROBLEMS ON LATER VISITS): 1555 - NOISE RELEASING CLUTCH 2072 - RESISTANCE AND ENGAGEMENT CHANGING IN THE CLUTCH MILEAGE/REPAIRS MADE: 5905 - MASTER CYLINDER/ACTUATOR REPLACED 19426 - CLUTCH, PRESSURE PLATE, AND FLYWHEEL REPLACED 34747 - CLUTCH, PRESSURE PLATE, FLYWHEEL, AND SLAVE CYLINDER REPLACED (AWAITING AMENDED REPAIR ORDER) AFTER LATEST REPAIR THE CAR IS BACK IN SHOP DUE TO RETURNED HYDRAULIC PRESSURE VARIANCE

tt. 12/4/2015 I HAVE A 2013 DODGE DART. AFTER 2 YEARS, THE CLUTCH SUDDENLY STUCK TO THE FLOOR, THE VEHICLE INOPERABLE; IT NEEDED A NEW MASTER CYLINDER. A FEW MONTHS LATER, I STARTED NOTICING IT STICKING AGAIN, BUT IT COULD BE PULLED OUT BY USING MY FOOT TO POP IT BACK OUT. SO I PROMPTLY TOOK IT TO THE DEALER. THEY SAID EVERYTHING WAS NORMAL. LAST MONTH, THE CLUTCH WENT OUT AGAIN. HAD TO BE TOWED TO THE DEALER. NOW IT SEEMS THEY ARE REPLACING THE ENTIRE CLUTCH KIT. TOLD ME THE FLYWHEEL WAS COMPLETELY BURNED OUT. AND TRIED TO BLAME MY DRIVING, SAYING THE FLYWHEEL WAS NORMAL WHEN THEY EVALUATED IT. NO WAY, DODGE. NOW THEY'VE HAD MY CAR SINCE NOVEMBER 16TH, TODAY BEING DEC. 3, AND IT STILL WON'T BE FIXED UNTIL WELL INTO NEXT WEEK. AND THE RENTAL CAR IS OUT OF MY POCKET.

uu. 12/23/2015 CAME UP TO A STOP SIGN, DROVE OFF AND WENT TO SHIFT INTO 2ND (STANDARD TRANSMISSION) AND MY SHIFTER WAS LOOSE. GEAR IS STUCK IN FIRST.

vv. 1/4/2016 CLUTCH PEDAL DOES NOT RETURN FROM DEPRESSED POSITION. CLUTCH PEDAL IS SOFT AND CLUTCH MECHANISM DOES NOT FUNCTION PROPERLY FOR A FEW MINUTES OF INITIAL OPERATION. AFTER THE INITIAL INCIDENT THIS PROBLEM HAS BECOME MORE FREQUENT AND NOW OCCURS ALMOST DAILY.

ww. 1/26/2016 1) SLAVE CYLINDER IN TRANSMISSION (MANUAL) BEGAN FAILING AT 12,000 MILES, CAUSING CLUTCH PEDAL TO LOSE PRESSURE AND NOT RETURN TO TOP OF TRAVEL. UNABLE TO SHIFT INTO ANY GEAR. THIS OCCURRED WHEN PARKED OVERNIGHT. DEALERSHIP REPLACED SLAVE CYLINDER, CLUTCH, AND THROW OUT BEARING WITH NO CHARGE.

xx. 2/10/2016 CAR SHIFTS OUT OF GEAR, HAS LITTLE POWER, SERVICE LIGHT COMES ON ,WILL NOT START AT TIMES, TAKEN TO DEALERS FOR RECALL R42 TWICE PARTS NOT AVAILABLE. NOW THEY ARE SAYING A WHOLE NEW TRANSMISSION IS NEEDED AT A COST OF OVER 8 THOUSAND DOLLARS. CLUTCH PLATE CRACKED AND FLY WHEEL DAMAGED. TRYING TO BLAME MY DRIVING, HAD TO BE TOWED.

yy. 3/4/2016 I GOT 2013 DODGE DART 1.4L TURBO 6 SPEED MANUAL AND EVERY MORNING WHEN LEAVE FOR WORK CLUTCH PEDAL GOES TO FLOOR AND HAVE TO PUMP IT GOOD BIT JUST TO GET IT TO CHANGE GEARS. STARTED CAR IN REVERSE AND CAR TAKES OFF WHILE ENGINE IS TURNING OVER. AND ON HIGHWAY IF STAY IN SAME GEAR FOR LONG PERIODS OF TIME IT WILL NOT COME OUT GEAR AND BEEN TO DEALERSHIP 2 TIMES FOR THIS AND THEY SAY NOTHING WRONG

## 2014 Dodge Dart:

a. 9/12/2014 TL* THE CONTACT OWNS A 2014 DODGE DART. WHILE DRIVING APPROXIMATELY 10 MPH, THE CLUTCH BECAME STUCK IN THE DOWNWARD POSITION AND THE GEAR SHIFTER WAS STUCK IN FIRST GEAR. THE CONTACT HAD TO DEPRESS THE CLUTCH COMPLETELY DOWN TO THE FLOORBOARD TO LOOSEN THE CLUTCH, FOLLOWED BY AGGRESSIVELY PULLING THE GEAR SHIFTER TO GET IT OUT OF FIRST POSITION. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED. THE VIN WAS

UNAVAILABLE. THE APPROXIMATE FAILURE MILEAGE WAS 33,000.

b. 1/29/2015 THE CLUTCH PEDAL WOULD STICK TO THE FLOOR IN COLD WEATHER. WOULD EASILY STALL BECAUSE OF POOR ENGAGEMENT. SOMETIMES THE CAR WOULD BUCK OR STUTTER BECAUSE THE CLUTCH WOULD NOT BE ABLE TO EFFECTIVELY ENGAGE. SOMETIMES THE VEHICLE WOULD STALL ON ENGAGEMENT AND HAVE TO SIT FOR SEVERAL MINUTES BEFORE THE ENGINE WOULD START. AFTER AN ATTEMPTED REPAIR TO THE CLUTCH HYDRAULICS BY CORWIN THE CLUTCH STILL HAS SLOP IN IT AND POOR WORKSMANSHIP WAS FOUND AT ANOTHER DEALER. THE TRANSMISSION IS NOW NOISY AND MAKES LOUD CLUNKING OR WHINING NOISES WHEN THE CLUTCH IS ENGAGED OR DISENGAGED. THE CLUTCH WILL STILL PARTIALLY STICK TO THE FLOOR IN SEVERE COLD AND IS NOT SAFE TO DRIVE. *TR

c. 4/9/2015 PURCHASED A 2014 DODGE DART USED WITH A 6 SPEED. THIS INCIDENT HAPPENED JUST THREE WEEKS AFTER I PURCHASED IT. I NOTICED IT STARTED TO SLIP AND WHILE DRIVING DOWN THE HIGHWAY I HEARD A NOISE, CAR LOST POWER AND SMOKE STARTED POURING OUT FROM UNDER THE HOOD. I HAD IT TOWED TO THE DEALERSHIP WHERE I WAS INFORMED THAT SOMETHING FAILED IN THE CLUTCH, BLOWING A HOLE THROUGH THE TRANSMISSION. THIS ALL HAPPENED WITHIN A MINUTE OR SO WHILE DRIVING AT HIGHWAY SPEEDS.

d. 7/27/2015 WHILE DRIVING CLUTCH WILL LOSE COMPRESSION MAKING IT DIFFICULT TO SHIFT WITHOUT GRINDING GEARS. CLUTCH WILL GO ALL THE WAY TO THE FLOOR AND INHIBITED YOU FROM SHIFTING. I HAVE HAD TO SHIFT INTO NEUTRAL TO SLOW DOWN HOPING THE CLUTCH REGAINS COMPRESSION IN ORDER TO SHIFT INTO APPROPRIATE GEAR. THIS ALSO INHIBITS PROPER ACCELERATION WHEN SHIFTING GEARS.

e. 9/15/2015 THE VEHICLE HAS A MANUAL TRANSMISSION. MY VEHICLE REVS WHEN ATTEMPTING TO SHIFT IT. THE CLUTCH WILL BE COMPLETELY UP AND THE VEHICLE WILL STILL REV AS IF IT IS ENGAGED. AT THIS POINT THERE IS NOTHING THAT CAN BE DONE UNTIL IT STOPS REVVING. IT ALSO GRINDS AND CLATTERS WHEN SHIFTING FROM 1ST TO 2ND AND 2ND TO 3RD GEAR. VERY ROUGH SHIFTING AND SOMETIMES EXPERIENCE A BURNING SMELL AFTER ITS DRIVEN.

49.     Also, complaints posted by consumers in forums demonstrate that the

Transmissions Defect suffered by Ms. Russell is widespread and dangerous and that it

manifests without warning. The complaints also indicate Defendant's awareness of the

problems with the transmission and how potentially dangerous the defective condition is for

consumers. The following are some safety complaints relating to Manual Transmission

Defects (spelling and grammar mistakes remain as found in the original) (Edmunds.com

(May 25, 2016), http://www.edmunds.com/).

**Edmunds.com**

a.     Posted on 4/2/2016 by teddyluv: I too have thought about a lawyer, as I had
the master cylinder replaced twice since Sept 2014, then in Jan of this year, the
clutch went out, I was told that it was normal wear & tear, had nothing to do
with the master cylinder& therefore cost me 2369.00 to repair. then it was
back in the shop, the turbo went out on it...... had it back for 6 days when
once again, the clutch pedal went to the floor & stayed there. For the THIRD
time in 1 1/2 years my 2013 Dodge dart is Back in the shop to have the
master cylinder replaced . Chrysler just says " I am sorry & refuses to work
with me. Hello: Look at the cars history, I feel that Chrysler should step up &
do the " Right " thing here. They do not seem to care about their customers,
or realize just how much word of mouth advertising can hurt their business. I
can't begin to tell you how many people I have already told about my issues,
and they Will not be purchasing a vehicle from Chrysler/ Dodge because of it.
I am amazed that there are so many issues with the Dodge dart & Chrysler is
getting away scott free.

b.     Posted on 4/2/2016 by fireemt45: I have a 2015 Dodge Dart with 22000
miles on it. I started having problems with the car two weeks ago. The clutch
would reengage while driving down the road at about 3000 rpms in third and
fourth gear. That was the first couple days. I went to the dealer right away and
I had to wait a week to get the car looked at. When I took the car to the dealer
finally the clutch was doing it in all six gears. They looked at it and claim that
it is normal wear and tear. They are paying for parts. I still dont understand
how the clutch is out at 22000 miles. I have been driving a Manual since I
started driving. Has anyone had a similair problem and what their dealer did to
fix the problem. I see that theres quite a few problems with the master
cylinder.

50.     The Transmission Defect poses an unreasonable safety risk for Class
Members, as well as the drivers, passengers, and pedestrians sharing the road with Class
Vehicles. A vehicle's ability to switch gears when parked or while in motion, and the ability
of a vehicle's transmission to perform properly are critical to a vehicle's safe operation. A
defect that causes one or more of these negative characteristics poses a safety hazard to the
general public, and increases the risk of automobile accidents.

### FCA Has Exclusive Knowledge of the Transmission Defect

51.     FCA had superior and exclusive knowledge of the transmission defect, and
knew or should have known that the defect was not known or reasonably discoverable by
Plaintiff and Class Members before they purchased or leased the Class Vehicles.

52.     Before Plaintiff purchased her Class Vehicle, and since at least early 2012,
FCA knew about the Transmission Defect through sources not available to consumers,
including: pre-release testing data, early consumer complaints about the transmission defects
to Chrysler and its dealers, testing conducted in response to those complaints, high failure
rates and replacement part sales data, aggregate data from Chrysler dealers, among other
internal sources of aggregate information about the problem.

53.     Before the Class Vehicles were available for sale, FCA acknowledged in its
own press releases the extensive pre-release testing and analysis it conducted before bringing
the Manual Transmission to the market. For example, on April 28, 2012, Chrysler posted a
media release, where Bob Lee, Vice President, Engine and Electrified Propulsion
Engineering – Chrysler Group LLC, stated, "The three new engines and transmissions
available in the new Dodge Dart have been designed and tested to meet consumer's needs

for fuel economy, refinement, durability and power in a compact car." Additionally, each transmission was said to have undergone "extensive testing and evaluation to ensure that customer expectations in the area of refined shifting characteristics . . . are met."

54.     FCA was also aware of the Transmission Defect through its experience with the same Manual Transmission used in 2011-2012 Dodge Journey vehicles, and the numerous complaints it received, both from consumers and from automotive journalists, who roundly criticized the performance of the Manual Transmission.

55.     In fact, on January 20, 2012, FCA issued Service Bulletin "06-001- 12" for the 2011-2012 model year Dodge Journey vehicles equipped with the very same manual transmissions and suffering from similar if not identical defects as alleged herein. Specifically, the Service Bulletin stated that the clutch pedal was inoperative in some vehicles. The Dodge Dart and Dodge Journey utilize the same Manual Transmission.

56.     Further, in or around November 2012, FCA issued service bulletin 10051770-2112 informing dealers that certain 2013 Dodge Dart vehicles were equipped with defective clutch slave cylinders and could cause a hydraulic fluid leak, which leads to a pressure loss in the clutch system and failure of the clutch pedal. FCA instructed its dealers to replace the clutch slave cylinder in the affected vehicles.

57.     Then, on or around August 15, 2014, FCA released STAR case number S1406000001 to its dealers addressing an issue in Dodge Dart vehicles equipped with the Manual Transmission where the "Clutch Pedal Does Not Return (Remains on the Floor) After Depressing the Pedal." FCA instructed its dealers to inspect the clutch pedal and replace the clutch master cylinder and reservoir hose, if necessary.

58. Additionally, in or around January 2016, FCA extended the clutch master cylinder and reservoir hose warranty period due to 2013-2015 Dodge Dart vehicles exhibiting a "loss of clutch pedal operation including limited pedal travel and limited clutch disengagement." FCA also provided reimbursement for Dodge Dart owners who experienced the clutch issues mentioned and previously paid for clutch master cylinder repairs. On information and belief, the campaign neither fixed the Transmission Defect nor did it actually reimburse all owners affected by the Transmission Defect for repairs performed on the clutch master cylinder and reservoir hose.

59. The existence of the Transmission Defect is a material fact that a reasonable consumer would consider when deciding whether to purchase or lease a vehicle that was equipped with a manual transmission. Had Plaintiff and other Class Members known that the Class Vehicles were equipped with defective transmissions, they would not have purchased or leased the Class Vehicles equipped with the Manual Transmissions or would have paid much less for them.

60. Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's transmission is safe, will function in a manner that will not pose a safety hazard, and is free from defects. Plaintiff and Class Members further reasonably expect that FCA will not sell or lease vehicles with known safety defects, such as the Transmission Defect, and will disclose any such defects to its consumers when it learns of them. They did not expect Chrysler to fail to disclose the Transmission Defect to them and to continually deny the defect.

**FCA Has Actively Concealed the Transmission Defect**

61.     While FCA has been fully aware of the Transmission Defect in the Class

Vehicles, it actively concealed the existence and nature of the defect from Plaintiff and Class

Members at the time of purchase, lease or repair and thereafter. Specifically, FCA failed to

disclose or actively concealed at and after the time of purchase, lease, or repair:

   (a) any and all known material defects or material nonconformity of the Class

       Vehicles, including the defects relating to the Manual Transmission;

   (b) that the Class Vehicles, including their Manual Transmission, were not in good in

       working order, were defective, and were not fit for their intended purposes; and

   (c) that the Class Vehicles and their Manual Transmission were defective, despite the

       fact that FCA learned of such defects through alarming failure rates, customer

       complaints, as well as through other internal sources, as early as 2012.

62.     As a result of the Transmission Defect, FCA was inundated with complaints

regarding the Manual Transmission.

63.     When consumers present the Class Vehicles to an authorized FCA dealer for

repair of the transmission, rather than repair the problem under warranty, FCA dealers,

agents of FCA, either inform consumers that their vehicles are functioning properly, or

conduct repairs that merely mask the defect. In fact, even when presented with video

evidence of the Transmission Defect herein alleged, FCA authorized repair facilities, which

act as FCA's repair agents, inform Class Members that the defect is known.

64.     To this day, FCA has still not modified or redesigned any of the defective

components that continue to cause the Transmission Defect.

65.     On information and belief, FCA has caused Plaintiff and Class Members to
expend money at its dealerships to diagnose, repair or replace the Class Vehicles' clutch
master cylinder and reservoir hose, clutch slave cylinder and release bearing, clutch disc and
pressure plate, and flywheel, despite FCA's knowledge of the Transmission Defect.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this lawsuit as a class action on behalf of herself, individually,
and all others similarly situated as members of the proposed Class pursuant to Federal Rules
of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality,
typicality, adequacy, predominance, and superiority requirements of those provisions.

67.     The Class and Sub-Class are defined as:

**Nationwide Class:** All individuals in the United States who purchased or leased any
Dodge Dart vehicle equipped with a Manual Transmission (the "Nationwide Class"
or "Class").

**Southern United States Sub-Class:** All members of the Nationwide Class who
reside in any Southern geographic states of the United States.

**Mississippi Sub-Class:** All members of the Nationwide Class who reside in the
State of Mississippi.

**MCPA Sub-Class:** All members of the Mississippi Sub-Class who are "consumers"
within the meaning of the Mississippi Consumer Protection Act, Mississippi Code §
75-24-1 *et. seq.*

**Implied Warranty Sub-Class:** All members of the Nationwide Class who purchased
or leased their vehicles in the State of Mississippi.

68.     Excluded from the Class and Sub-Classes are: (1) Defendant, any entity or
division in which Defendant has a controlling interest, and their legal representatives,
officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and
the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the

facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions
if discovery and further investigation reveal that the Class and Sub-Class should be expanded
or otherwise modified.

69.     <u>Numerosity</u>: Although the exact number of Class Members is uncertain and
can only be ascertained through appropriate discovery, the number is great enough such that
joinder is impracticable. The disposition of the claims of these Class Members in a single
action will provide substantial benefits to all parties and to the Court. The Class Members
are readily identifiable from information and records in Defendant's possession, custody, or
control, as well as from records kept by the various Departments of Motor Vehicles of the
states.

70.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class in that
Plaintiff, like all Class Members, purchased or leased a Class Vehicle designed, manufactured,
and distributed by FCA, and equipped with a Manual Transmission. The representative
Plaintiff, like all Class Members, has been damaged by Defendant's misconduct in that she
has incurred, or will incur, the cost of repairing or replacing the defective transmission.
Furthermore, the factual bases of FCA's misconduct are common to all Class Members and
a common thread resulting in injury to all Class Members.

71.     <u>Commonality</u>: There are numerous questions of law and fact common to
Plaintiff and the Class that predominate over any question affecting only individual Class
Members. These common legal and factual issues include the following:

(a) Whether Class Vehicles suffer from defects relating to the Manual Transmission;

(b) Whether the defects relating to the Manual Transmission constitute an unreasonable safety risk;

(c) Whether Defendant knows about the defects relating to the Manual Transmission and, if so, how long Defendant has known of the defect;

(d) Whether the defective nature of the Manual Transmission constitutes a material fact;

(e) Whether Defendant has a duty to disclose the defective nature of the Manual Transmission to Plaintiff and Class Members;

(f) Whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction;

(g) Whether Defendant knew or reasonably should have known of the defects relating to the Manual Transmission before it sold and leased Class Vehicles to Class Members;

(h) Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing and replacing the defective Manual Transmission;

(i) Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective Manual Transmission or clutch components;

(j) Whether Defendant breached the implied warranty of merchantability pursuant to the federal Magnuson-Moss Act; and

(k) Whether Defendant breached the implied warranty of merchantability pursuant to the Mississippi Consumer Protection Act and other so-called "lemon laws" under Mississippi state law;

72.    <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer class actions, and Plaintiff, and her counsel, intend to prosecute this action vigorously.

73.    <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION
**(Violation of the Mississippi Consumer Protection Act, Miss. Code § 75-24-1 *et. seq.*)**

74.    Plaintiff incorporates by reference the facts pleaded in the preceding paragraphs of this Complaint.

75.     Plaintiff brings this cause of action on behalf of herself, individually, and on behalf of the members of the MCPA Sub-Class.

76.     Defendant is a "person" as defined by Miss. Code § 75-24-3.

77.     Plaintiff and MCPA Sub-class Members are "consumers" within the meaning of the MCPA because they purchased their Class Vehicles primarily for personal, family, or household use.

78.     By failing to disclose and concealing the defective nature of the transmissions from Plaintiff and prospective Class Members, Defendant violated Miss Code § 75-24-5(g), as it represented that the Class Vehicles and their transmissions had characteristics and benefits that they do not have, and represented that the Class Vehicles and their transmissions were of a particular standard, quality, or grade when they were of another.

79.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

80.     Defendant knew that the Class Vehicles and their transmissions suffered from an inherent defect, were defectively designed, and were not suitable for their intended use.

81.     As a result of their reliance on Defendant's omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

82.     Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the transmissions and/or the associated repair costs because:

(a) Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b) Plaintiff and Class Members could not reasonably have been expected to learn or discover that their transmissions had a dangerous safety defect until it manifested; and

(c) Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn of or discover the safety defect.

83.     In failing to disclose the defective nature of the transmissions, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

84.     The facts Defendant concealed from or failed to disclose to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay less. Had Plaintiff and Class Members known that the Class Vehicles' transmissions were defective, they would not have purchased or leased the Class Vehicles – or they would have paid much less for them.

85.     Plaintiff and Class Members are reasonable consumers who do not expect the transmissions installed in their vehicles to exhibit problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to

accelerate or decelerate. This is the reasonable and objective consumer expectation relating to vehicle transmissions.

86.     As a result of Defendant's conduct, Plaintiff and Class Members were harmed and suffered actual damages in that, on information and belief, the Class Vehicles experienced and will continue to experience problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to accelerate or decelerate.

87.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages.

88.     Plaintiff and the Class are entitled to equitable relief.

89.     As a result of these grossly-negligent or intentional violations of the statutory – and tort-based – duties that FCA owed to Plaintiff and the Class, they seek monetary, compensatory, punitive damages, and all attorney's fees and costs of litigation, in addition to injunctive and equitable relief.

## SECOND CAUSE OF ACTION
### (Gross Negligence and Negligent Misrepresentation of Material Facts)

90.     Plaintiff incorporates by reference the facts pleaded in the preceding paragraphs of this Complaint.

91.     Plaintiff bring this cause of action on behalf of herself, individually, and on behalf of the Class.

92.     As a result of their reliance on Defendant's grossly-negligent omissions, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money,

property, and/or value of their Class Vehicles. Additionally, as a result of the grossly-negligent Transmission Defect (that is either the product of the grossly-negligent design or a manufacture-defect of the Class Vehicles by FCA), Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

93.    Plaintiff and Class Members are reasonable consumers who do not expect their transmissions to exhibit problems such as the clutch pedals "going soft" and remaining depressed to the floor, transmissions failing to engage or disengage, gear shifts burning out, the clutches and transmissions burning out, stalling, and failure to accelerate or decelerate.

94.    Defendant knew the Class Vehicles and their transmissions suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

95.    In failing to disclose the defects with the transmission, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so. This is in addition to the separate breaches of the tort-based duties that FCA owed to Plaintiff and Class Members to design, and manufacture, the Class Vehicles in a reasonably prudent manner free from unreasonable design and manufacture defects, like the Transmission Defect at issue in this class action lawsuit.

96.    Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles and their transmissions:

(a) Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' transmissions;

(b) Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their transmissions; and

(c) Defendant actively concealed the defective nature of the Class Vehicles and their transmissions from Plaintiff and the Class.

97.     The facts Defendant concealed from or not disclosed to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Class Vehicles. Had Plaintiff and other Class Members known that the Class Vehicles' transmissions were defective and posed a safety hazard, then Plaintiff and the other Class Members would not have purchased or leased Class Vehicles equipped with transmissions – or they would have paid much less for them.

98.     Defendant continued to conceal the defective nature of the Class Vehicles and their transmissions even after Class Members began to report problems. Indeed, Defendant continues to cover up and conceal the true nature of the problem.

99.     Defendant's conduct was and is likely to deceive consumers.

100.    Defendant's acts, conduct and practices were unlawful, in that they constituted:

(a) Violations of the Mississippi Consumer Protection Act; and

(c) Violations of the Magnuson-Moss Warranty Act.

101.    By its conduct, Defendant has engaged in acts of: gross negligence, unfair competition, and unlawful, unfair, and fraudulent business practices.

102.     Defendant's grossly-negligent, unfair or deceptive acts or practices occurred

repeatedly in Defendant's trade or business, and were capable of deceiving a substantial

portion of the purchasing public.

103.     As a direct and proximate result of Defendant's grossly-negligent, unfair or

deceptive practices, Plaintiff and the Class have suffered and will continue to suffer actual

damages.

104.     Defendant has been unjustly enriched and should be required to make

restitution to Plaintiff and the Class pursuant to the Mississippi Consumer Protection Act,

Mississippi tort law, the federal Magnuson-Moss Warranty Act, and the common law.

### THIRD CAUSE OF ACTION
### (Breach of Implied Warranties)

105.     Plaintiff incorporates by reference the facts pleaded in the preceding

paragraphs of this Complaint.

106.     Plaintiff bring this cause of action against Defendant on behalf of herself,

individually, and on behalf of the members of the Implied Warranty Sub-Class.

107.     Defendant was at all relevant times the manufacturer, distributor, warrantor,

and seller of the Class Vehicles. Defendant knew or had reason to know of the specific use

for which the Class Vehicles were purchased or leased.

108.     Defendant provided Plaintiff and Class Members with an implied warranty

that the Class Vehicles and their components and parts are merchantable and fit for the

ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their

ordinary purpose of providing reasonably reliable and safe transportation because, among

other defects, the Class Vehicles and their transmissions, suffered from an inherent defect at

the time of sale and thereafter are not fit for their particular purpose of providing safe and reliable transportation.

109.    Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

110.    Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design and manufacture of their transmissions.

111.    The alleged Transmission Defect is inherent in each Class Vehicle and was present in each Class Vehicle at the time of sale.

112.    As a result of Defendant's breach of the applicable implied warranties, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Transmission Defect, Plaintiff and Class Members were harmed and suffered actual damages in that the Class Vehicles' clutch components are substantially certain to fail before their expected useful life has run.

113.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of Mississippi law.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*)

114.    Plaintiff incorporates by reference the facts pleaded in the preceding paragraphs of this Complaint.

115.    Plaintiff brings this cause of action on behalf of herself, individually, and on behalf of the Nationwide Class, or, in the alternative, on behalf of the proposed Sub-Classes referenced, above, this this Complaint, against Defendant.

116.    The Class Vehicles are a "consumer product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

117.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

118.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

119.    FCA impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their transmissions were manufactured, supplied, distributed, and/or sold by FCA were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their transmissions would be fit for their intended use while the Class Vehicles were being operated.

120.     Contrary to the applicable implied warranties, the Class Vehicles and their transmissions at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective design of their transmissions.

121.     Defendant's breach of implied warranties has deprived Plaintiff and Class Members of the benefit of their bargain.

122.     The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25,000. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs), computed on the basis of all claims to be determined in this suit.

123.     Defendant has been afforded a reasonable opportunity to cure its breach, including when Plaintiff and Class Members brought their vehicles in for diagnoses and repair of the transmission.

124.     As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiff and Class Members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, and/or other relief as appropriate.

125.     As a result of Defendant's violations of the Magnuson-Moss Warranty Act, as pleaded in this Complaint, Plaintiff and Class Members have incurred damages.

## FIFTH CAUSE OF ACTION
### (For Unjust Enrichment)

126.   Plaintiff incorporates by reference the facts pleaded in the preceding paragraphs of this Complaint.

127.   Plaintiff brings this cause of action on behalf of herself, individually, and on behalf of the Class Members against Defendant.

128.   As a direct and proximate result of Defendant's failure to disclose known defects, Defendant has profited through the sale and lease of the Class Vehicles. Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

129.   Additionally, as a direct and proximate result of Defendant's failure to disclose known defects in the Class Vehicles, Plaintiff and Class Members have vehicles that require repeated, high-cost repairs that can and therefore have conferred an unjust substantial benefit upon Defendant.

130.   Defendant has, therefore, been unjustly enriched due to the known defects in the Class Vehicles through the use of funds that earned interest or otherwise added to Defendant's profits when said money should have remained with Plaintiff and Class Members.

131.   As a result of the Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

## RELIEF REQUESTED

132.   Plaintiff, on behalf of herself, individually, and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a) An order certifying the proposed Class and Sub-Classes, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b) A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Manual Transmission, including the need for periodic maintenance;

(c) An order enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles; compelling Defendant to issue a recall for the Class Vehicles pursuant to the applicable NHTSA guidelines; compelling Defendant to remove, repair, and/or replace the Class Vehicles' defective transmission components with suitable alternative product(s) that do not contain the defects alleged herein; enjoining Defendant from selling the Class Vehicles with the misleading information; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed;

(d) A declaration requiring Defendant to comply with the various provisions of the Mississippi Consumer Protection Act and to make all the required disclosures;

(e) An award to Plaintiff and the Class for compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(f) Any and all remedies provided pursuant to the Mississippi Consumer Protection Act;

(g) Any and all remedies provided pursuant to the federal Magnuson-Moss Warranty Act;

(h) A declaration that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale or lease of its Class Vehicles, or make full restitution to Plaintiff and Class Members;

(i) An award of attorneys' fees and costs, as allowed by law;

(j) An award of attorneys' fees and costs pursuant to Mississippi statutory and common law;

(k) An award of pre-judgment and post-judgment interest, as provided by law;

(l) Leave to amend the Complaint to conform to the evidence produced at trial; and

(m) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

133.    Pursuant to Federal Rule of Civil Procedure 38(b), and any applicable Local Rules, Plaintiff demands a trial by jury of any and all issues in this action so triable.

Respectfully,

ELIZABETH RUSSELL, on behalf of herself and all of those similarly situated

By: _____
Macy D. Hanson

_____
John B. "Ben" Rowley

Attorneys for the Plaintiff

MACY D. HANSON – MS BAR # 104197
macy@macyhanson.com
THE LAW OFFICE OF MACY D. HANSON, PLLC
THE ECHELON CENTER
102 FIRST CHOICE DRIVE
MADISON, MISSISSIPPI 39110
TELEPHONE: (601) 853-9521

JOHN B. "BEN" ROWLEY – MS BAR #104243
ben@benrowleylaw.com
BEN ROWLEY LAW, PLLC
209 APACHE DRIVE
MCCOMB, MISSISSIPPI 39648
TELEPHONE: (601) 757-0822